UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HAMPTON,<br><br>    Plaintiff,<br><br>  v.<br><br>R. HAYNIE, et al.,<br><br>    Defendants. | No. 2:14-cv-2038 TLN KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

    Plaintiff is a state prisoner, proceeding without counsel. This civil rights action, filed pursuant to 42 U.S.C. § 1983, proceeds on plaintiff's amended complaint against defendants Dragash, Sherburn, and Haynie. (ECF No. 9.) Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies is before the court. As set forth more fully below, the undersigned finds that defendants' motion for summary judgment should be granted.

II. Amended Complaint

    Plaintiff claims that defendants violated his Eighth Amendment rights by failing to protect him by knowingly housing him with an inmate known to be assaultive of other inmates.

III. Defendants' Motion for Summary Judgment

    Defendants move for summary judgment on the grounds that plaintiff failed to "complete the administrative review process in accordance with the applicable procedural rules, including

1

deadlines, as a precondition to bringing suit in federal court." (ECF No. 29-1 at 1), quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006). On December 4, 2015, plaintiff was granted leave to file an amended opposition that was signed by plaintiff. Plaintiff's amended opposition[1] was filed on December 28, 2015, and defendants filed an amended reply on December 30, 2015.

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford, 548 U.S. at 90. The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See Booth, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Bock, 549 U.S. at 218).

---

[1] Initially, plaintiff objects that defendants' exhibits are not numbered and thus are "invalid." (ECF No. 42 at 1.) Plaintiff cites to no authority to support this argument, and the court is unaware of any. The declarations provided in support of defendants' motion comport with Local Rule 142(a). Plaintiff's objection is overruled.

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7. Now inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services.

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock, 549 U.S. at 204, 216. In Albino, the Ninth Circuit agreed with the underlying panel's decision[2]

---

[2] See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low." Id. at 1031. Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process. Id. at 1032.

"that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),] should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (hereafter "Albino"). A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. See Albino, 747 F.3d at 1172.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino, 747 F.3d at 1172-73. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d 1162.

B. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need

4

only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on March 16, 2015 (ECF No. 30), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

C. Facts[3]

1. At times relevant to the lawsuit, plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), housed at the California State Prison, Sacramento ("CSP-SAC") in Represa, California. (ECF No. 9 at 1.)

---

[3] For purposes of the instant motion for summary judgment, the court finds the following facts undisputed, unless otherwise indicated. Documents submitted as exhibits are considered to the extent they are relevant, and despite the fact that they are not authenticated, because such documents could be admissible at trial if authenticated.

2. On July 7, 2014, inmate Candler was plaintiff's assigned cellmate. (ECF No. 9 at 1.)

3. On July 7, 2014, plaintiff and inmate Candler had a fight. (ECF No. 9 at 3; 1 at 3, 21.) No staff use of force was required to stop the fight because the inmates stopped when ordered to do so. (ECF No. 1 at 21.) Plaintiff received a rules violation report ("RVR") for fighting, Log No. B-14-07-017. (ECF No. 1 at 21-23.)[4]

4. On July 9, 2014, plaintiff and Candler had another altercation. (ECF No. 1 at 3.)

5. On July 9, 2014, plaintiff was placed in the Administrative Segregation Unit (ASU). (ECF No. 1 at 12.)[5]

6. On July 13, 2014,[6] plaintiff filed a 602 Inmate/Parolee Appeal under the subject "American With Disability Act" that alleged that he was "mentally and mobility impaired," that he and his cellmate were having problems and couldn't get along, and that defendant Haynie "ficticiously (sp) wrote a 114-D lockup." (ECF No. 1 at 7-10.)

7. Plaintiff's appeal also claimed discrimination and retaliation while stating that the "Code of Silence" is a no-tolerance policy. Plaintiff's appeal requested $1,000,000 in monetary

---

[4] The last page of the RVR provided by plaintiff states that plaintiff violated Rule No. 3005(d). (ECF No. 1 at 23.) California Code of Regulations, Title 15, Section 3005(d), prohibits the use of force or violence by inmates. Id. Plaintiff provided a copy of another RVR, Log No. B-14-07-015, charging plaintiff with willfully delaying a peace officer (ECF No. 1 at 15), but these charges were dismissed because the hearing officer found plaintiff not guilty (ECF No. 1 at 16.)

[5] Defendants claim that plaintiff was placed in the ASU because custody staff believed plaintiff was staging fights in an attempt to gain single cell status. Plaintiff contends he was placed in the ASU in retaliation, and argues that because he was placed in the ASU, but inmate Candler was not, it demonstrates misconduct on the part of defendants. However, the reason plaintiff was placed in the ASU is not relevant to the question of exhaustion of administrative remedies at issue in the current motion.

[6] Plaintiff claims that the date was June 11, 2014, not July 13, 2014, and refers to Exhibit 14. (ECF No. 42 at 4.) However, Exhibit 14 is plaintiff's CDCR 1824 Reasonable Modification or Accommodation Request, Log No. SAC-H-14-01660, in which plaintiff seeks single cell status because he was at risk due to his mobility issues. (ECF No. 42 at 9-10.) Plaintiff signed this request on June 2, 2014, which was stamped June 11, 2014, and such request is very different from the 602 appeal, Log No. SAC-S-14-02004, addressed here. (Compare ECF No. 42 at 9-10 with ECF No. 1 at 7-9.) Moreover, as argued by defendants, because the instant action pertains to fights that occurred between July 7 and July 9, 2014, request Log No. SAC H-14-01660, signed June 2, 2014, cannot be relevant to whether plaintiff subsequently exhausted his claims concerning the fights that occurred in July.

and punitive damages, as well as requesting that Lt. Haynie and Officer Sherburn face criminal charges for falsifying legal documents. (ECF No. 1 at 7-10.)

8. On July 25, 2014, C. Burnett, the Appeals Coordinator for CSP-Sacramento, rejected plaintiff's appeal pursuant to California Code of Regulations, Title 15, § 3084.6(b)(8), for "involving multiple issues that . . . are not directly related and cannot be reasonably addressed in a single response due to this fact." C. Burnett's rejection letter advised plaintiff that he could resubmit the unrelated issues separately using separate appeals. (ECF No. 1 at 6; C. Burnett Decl. ¶11; Ex. A.)

9. C. Burnett's rejection letter also advised plaintiff that the staff complaint portion of his appeal was rejected pursuant to § 3084.6(b)(7) for missing necessary support documents, and specified that a CDC 1858 Rights and Responsibilities form must be attached for staff complaint issues. (ECF No. 1 at 6; C. Burnett Decl. ¶11; Ex. A.)

10. Each institution within the CDCR employs a designated Appeals Coordinator who, prior to accepting an appeal for review, is responsible for screening and categorizing every appeal. (Cal. Code Regs. tit. 15, § 3084.5; C. Burnett decl. ¶2.)

11. At the relevant time in this case, CDCR regulations required prisoners to submit an appeal to the Appeals Coordinator within thirty calendar days of the event or decision being appealed, use the required form, and proceed through three levels of appeal: (1) first level; (2) second level appeal to hiring authority; and (3) third level appeal at the director's level. (Cal. Code Regs. tit. 15, §§ 3084.2(a), 3084.7, 3084.8(b); C. Burnett decl. ¶3.)

12. Plaintiff was required to obtain a decision at the third level (Director's level) in order to fully exhaust his available administrative remedies. (Cal. Code Regs. tit. 15, § 3084.1(b).)

13. In some instances, the Appeals Coordinator will not accept an appeal for review on the merits of the inmate's problem because the appeal is deficient under one or more criteria specified by the California Code of Regulations. For example, an appeal may be rejected, and thus, no response rendered, if it involves multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response due to this fact. (Cal. Code Regs. tit. 15, § 3084.6(b)(1)-(16); C. Burnett decl. ¶5.)

14. Whenever an appeal is rejected pursuant to § 3084.6(b) of the regulations, the Appeals Coordinator is required to provide clear and sufficient instructions regarding further actions the inmate must take to qualify the appeal for processing. (Cal. Code Regs. tit. 15, § 3084.6(a)(1).) An appeal that is rejected in this way may later be accepted if the reason noted for the rejection is corrected and the appeal is returned to the appeals coordinator within thirty calendar days of rejection. (Cal. Code Regs. tit. 15, § 3084.6(a)(2); C. Burnett decl. ¶5.)

15. If an inmate does not return the corrected appeal within thirty days of rejection by the Appeals Coordinator, the appeal is cancelled and cannot be resubmitted. (Cal. Code Regs. tit. 15, § 3084.6(c)(10).)

16. After plaintiff's appeal was rejected on July 25, 2014, he did not submit a corrected appeal on the issues raised in his rejected appeal. (C. Burnett decl. ¶12.)

17. Plaintiff has not pursued any appeal on this matter to the third level of review.[7] (R. Briggs decl. ¶5; Ex. A.)

D. Discussion

First, plaintiff argues that defendants are barred from raising an exhaustion defense because he amended his complaint and defendants "already raised this issue." (ECF No. 42 at 1.) However, failure to exhaust is an affirmative defense that defendants are entitled to raise whether or not plaintiff addresses the issue in his pleading. Moreover, in their answer, defendants pled such affirmative defense (ECF No. 22 at 3), thus preserving the defense for resolution by the court.

Second, plaintiff contends that he is not required to exhaust his claims pursuant to Title II of the Americans with Disabilities Act ("ADA"), citing Finley v. Giacobbe, 872 F.Supp. 215, 219 (S.D. N.Y. 1993) (declining to apply New York's notice-of-claim statute to ADA claims). However, as pointed out by defendants, the Tenth Circuit later clarified that Finley "dealt with the lack of an exhaustion requirement in the ADA itself, not the lack of an exhaustion requirement under the PLRA for prisoners' suits under the ADA." Jones v. Smith, 109 F. App'x 304, 308

---

[7] Plaintiff contends that he could not appeal to the third level and provides his reasons therefor. However, he does not dispute that he did not pursue the appeal to the third level.

(10th Cir. 2004). Thus, plaintiff's argument that he is not required to exhaust his claims pursuant to Title II of the ADA is unavailing. Although plaintiff contends that he is disabled and entitled to accommodations under the ADA, the instant action is not an action under the ADA. Rather, plaintiff claims that defendants failed to protect plaintiff, in violation of the Eighth Amendment, by knowingly housing plaintiff with an inmate known to be assaultive of other inmates. Plaintiff is required to exhaust his administrative remedies as to such claims pursuant to the PLRA.

Here, the question for the court is whether plaintiff exhausted his administrative remedies regarding his claims against the defendants, and if he did not, whether plaintiff's failure to meet the pre-filing exhaustion requirement may be excused. See Sapp, 623 F.3d at 823-24.

a. Did plaintiff exhaust?

The undisputed evidence shows that plaintiff did not exhaust his administrative remedies as to the instant claims against defendants through the third level of review. Indeed, in his verified original complaint and verified amended opposition, plaintiff conceded that he did not complete the grievance process through the third level of review. (ECF Nos. 1 at 2; 42 at 6.) It is undisputed that plaintiff did not resubmit his appeal after it was screened out at the first level of review. Moreover, defendants submitted unrefuted evidence that plaintiff submitted no appeals that were accepted for review at the third level of review concerning plaintiff's claims against defendants Haynie, Sherburn, or Dragash, during the period of July 1, 2014, through October 1, 2014. (ECF No. 29-3 at 2; 4.) Thus, defendants have carried their burden of showing that plaintiff did not exhaust his available remedies. Consequently, the burden shifts to plaintiff to come forward with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

The Ninth Circuit has recognized that administrative remedies may be rendered effectively unavailable if prison officials improperly screen out an inmate appeal. Sapp, 623 F.3d at 822-23. To satisfy this exception to the exhaustion requirement, a plaintiff must show "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2)

10

that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." Id. at 823-24. See also Nunez, 591 F.3d at 1224-26 (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown, 422 F.3d at 940 (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

### b. Is plaintiff excused from exhausting?

#### i. Was the Appeal Improperly Screened Out?

It is undisputed that on July 25, 2014, C. Burnett, Appeals Coordinator for CSP-SAC, wrote plaintiff a letter informing him that appeal Log No. SAC-S-14-02004 was rejected pursuant to California Code of Regulations, Title 15 § 3084.6(b)(8), because the appeal "involve[d] multiple issues that do not derive from a single event, or are not directly related and cannot reasonably be addressed in a single response." (ECF No. 1 at 6; Undisputed Fact ("UDF") 8.) Burnett advised plaintiff that he could resubmit the unrelated issues separately using separate appeals. Plaintiff was also advised that the staff complaint portion of his appeal was rejected pursuant to Title 15 § 3084.6(b)(7) because necessary support documents were missing, and he failed to attach a CDC 1858 Rights and Responsibilities form. (UDF 9.)

Plaintiff argues that the appeal did derive from a single incident, but points to no evidence in support thereof. In his verified amended opposition, plaintiff claims the "screen out was falsified," but offers no evidence or facts in support. (ECF No. 42 at 3),

The appeal was properly screened out based on the undisputed prison regulations set forth above. In his appeal, plaintiff alleged that the subject of his appeal was the Americans with Disability Act. (ECF No. 1 at 7.) He explained his appeal by stating he is mentally and mobility impaired, and that he and his cellmate were having problems and couldn't get along. He claimed he informed defendants a week before that he was mobility impaired and that they were putting his life in jeopardy before "the cell fight." (ECF No. 1 at 9.) Plaintiff alleged that defendant Haynie falsified legal documents, first, a 114-D lock-up order; second, another 114-D claiming plaintiff started two fights. Plaintiff claimed he had been discriminated and retaliated against. He claimed an inmate attacked him on the yard after plaintiff picked up his property. In addition to

monetary damages, plaintiff sought criminal charges against defendants Haynie and Sherburn for falsifying legal documents. (ECF No. 1 at 7.)

Plaintiff's appeal is unclear and mentions several possible issues, such as discrimination, retaliation, and falsified legal documents, as well as more than one incident, and provides no facts suggesting the incidents were related. If plaintiff believed that his appeal pertained to one incident, he could have resubmitted the appeal. For example, if he believed that defendants knowingly housed him in a cell with an inmate with a known assaultive history, he could have resubmitted the appeal clarifying his belief that his claims were based on one incident, specifically the alleged wrongful housing. In the alternative, plaintiff could have re-submitted his staff complaint clarifying his allegations against defendants and appended the required documents. Given the murky nature of plaintiff's appeal, the court cannot find that the appeal was improperly rejected. Because plaintiff did not return the corrected appeal within thirty days of the rejection, plaintiff's appeal was properly cancelled and cannot be resubmitted. (UDF 15.)

Plaintiff contends that he could not submit multiple appeals because it would result in his being barred from filing additional appeals. (ECF No. 42 at 6.) Plaintiff claims that he could only file two appeals within a two week period. However, if plaintiff believed that all of his claims stemmed from the improper cellmate assignment, he could have resubmitted such appeal clarifying that fact. Or, plaintiff could have prioritized his complaints and filed the appeal he wished to pursue in federal court.

ii. Subsequent Appeal, Log No. SAC C-14-02296

In opposition, plaintiff claims that he wrote a grievance against C. Burnett "for the Code of Silence." This appeal, Log No. SAC C-14-02296, was signed on August 20, 2014, within the requisite time constraints. (ECF No. 42 at 15.) However, this appeal alleges that CSP-SAC appeal coordinators were impeding plaintiff's access to the courts, and asks that his appeals be processed "as they should be. Stop the scheme 'Code of Silence.'" (ECF No. 42 at 15.) Plaintiff only provided the first page of this appeal.[8] (Id.)

---

[8] It appears there may have been a second page because the fourth line of section A stops midsentence: "writer from the Court's, violating Appellant's . . . ." (ECF No. 42 at 15.)

To the extent plaintiff contends that this appeal exhausted his claims, such argument fails. There are no allegations on page one of this appeal that put prison officials on notice that plaintiff believed that defendants knowingly housed plaintiff with an inmate with a known assaultive history. Because plaintiff included no factual allegations as to the instant claims, this appeal would not have exhausted the claims that he seeks to pursue herein. Sapp, 623 F.3d at 822-23.

Plaintiff also provided a copy of the first level appeal response, granting the appeal. (ECF No. 42 at 13.) This appeal response also suggests that there was another page to the appeal because the appeal was summarized to include the additional allegations:

> . . . You further claim the Appeals Coordinator has attempted to cover up misconduct by fellow staff members which you characterize as the "Code of Silence." You state your allegations are based on actions taken by the Appeals Coordinator concerning an appeal which was rejected on July 25, 2014. Specifically, the appeal you filed against SAC Staff (Log# SAC-S-14-02004), was rejected based on a lack of adequate documentation to support the allegations you made in the appeal. . . . On September 29, 2014, you were interviewed regarding the aforementioned issues. You stated you had no further information to add, noting your issue was clearly articulated on the Inmate/Parolee Appeal form (CDCR 602) you submitted.

(ECF No. 42 at 13.) The appeal was granted, stating that "[t]he Appeals Coordinator shall not engage in any misconduct or attempt to cover up misconduct by other departmental employees." (Id.) In addition, after consideration of the documentation and supporting arguments, the reviewer found that plaintiff "failed to raise any significant new issues or evidence in appealing this matter," and "determined staff acted appropriately and in accordance with State law, the CCR, and the DOM." (Id.) Thus, it appears that the reviewer found that plaintiff's appeal Log No. SAC-S-14-02004 was properly rejected.

Inferring from the appeal response that there was a second page in which plaintiff specifically included the information referenced in the appeal response, his focus remained on the appeals coordinator's actions, not the named defendants. The response noted plaintiff's lack of documentation, yet plaintiff failed to file a second level appeal either clarifying the nature of his appeal or providing the documentation to pursue a staff complaint against defendants. Thus, Appeal Log No. SAC C-14-02296 would not have served to exhaust his claims against defendants

1   had he pursued the appeal to the third level of review.  And, in any event, plaintiff failed to

2   pursue this claim to the third level of review.

3   Similarly, to the extent plaintiff contends that appeal Log No. SAC C-14-02296 should

4   serve to excuse his failure to exhaust the instant claims to the third level of review, such argument

5   fails, because the appeal was appropriately addressed by prison officials, and did not address or

6   grant plaintiff the relief sought in appeal Log No. SAC-S-14-02004 or in the instant action.

### iii.  Previous Request (CDCR 1824), Log No. SAC-H-14-01660

8   Plaintiff contends that defendants are "distorting the truth," (ECF No. 42 at 2), and refers

9   to his Exhibit 14.  Plaintiff claims that he was provided a cane in 2011, and because all

10  defendants have seen him with his cane, they know plaintiff is disabled.  (Id.)

11  Plaintiff's "Exhibit 14" is a June 18, 2014 memo from R. Jibson, Appeals Coordinator,

12  screening out request Log No. SAC H-14-01660, noting that plaintiff's documents were returned

13  because his "appeal does not meet the criteria for processing as a CDCR Form 1824 as the issue

14  raised is not subject to the Armstrong Remedial Plan (ARP)."  (ECF No. 42 at 9.)  Plaintiff was

15  informed that he could file a CDCR Form 602 to appeal the non-ARP issues, and that the

16  "provisions specified in CCR 3084 apply to non-ARP issues."  (ECF No. 42 at 9.)  Jibson advised

17  plaintiff that his appeal was being returned because he was "requesting to be single celled.  You

18  will need to address this issue on a CDCR 602 (green) form and attach your most recent 128-G,

19  Classification Chrono."  (ECF No. 33 at 7.)  Appended to the Jibson memo was plaintiff's

20  "Reasonable Modification or Accommodation Request" on a CDCR 1824 form, dated June 2,

21  2014, in which plaintiff sought single cell housing because his mobility issues (his legs are weak

22  and he has a cane) placed him at risk.  (ECF No. 33 at 8.)  The 1824 form was stamped June 11,

23  2014.

24  The United States Supreme Court requires prisoners to "properly exhaust administrative

25  remedies" by following the procedural rules defined "by the prison grievance process."  Bock,

26  549 U.S. at 218.  As set forth above in detail, California prisoners are required to pursue

27  administrative remedies by filing a Form 602 grievance through the third level of review.  Filing a

28  request for accommodation under the ADA does not exhaust administrative remedies for

purposes of bringing a § 1983 action in federal court. Because plaintiff pursued this claim on a CDCR 1824 form and not on the 602 form, his Exhibit 14 is of no consequence here.

Moreover, as noted in footnote 6, *infra*, the instant action pertains to fights that occurred between July 7 and July 9, 2014; thus, request Log No. SAC H-14-01660, signed June 2, 2014, cannot demonstrate that plaintiff exhausted his administrative remedies following the fights that occurred in July of 2014.

For these reasons, request Log No. SAC H-14-01660 cannot excuse plaintiff from the exhaustion requirement at issue here.

In conclusion, plaintiff should not be excused from the exhaustion requirement. While the Ninth Circuit has recognized that the PLRA may not require exhaustion when circumstances beyond a prisoner's control render administrative remedies "effectively unavailable," Nunez, 591 F.3d at 1226; Sapp, 623 F.3d at 822-23, such unavailability is generally premised on the failure of prison officials to accord meaningful access to the administrative grievance process, or to provide meaningful review of a prisoner's grievance. Plaintiff failed to adduce evidence demonstrating that prison officials prevented him from fully and timely exhausting his administrative grievances. Thus, defendants' motion for summary judgment should be granted based on plaintiff's failure to exhaust his administrative remedies.

IV. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 29) be granted, and

2. This action be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The

////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 15, 2016

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/cw/hamp2038.msj.fte